## APPEAL OF TROY MANUFACTURING CO.

### Docket No. 6585.   Promulgated May 27, 1927.

1. At the time of the entry of the United States into the World War, taxpayer was engaged in the manufacture of automobile bodies. It immediately remodeled its plant and engaged in the manufacture of aeroplane parts for companies making aeroplanes for the United States. At the close of the war, the demand for aeroplane parts ceased. Taxpayer found that the demand for open-car bodies had been lessened by that for closed bodies and early in the year 1919, finding that it could not sell its plant or secure contracts for manufacturing anything for which it was suitable, leased it for a small rental. After deciding to go out of business it wrote down the book value of its depreciable assets to the alleged capitalized value of the net annual rental received from the lease. *Held*, that the amount so written off was not deductible from gross income under the provisions of section 234 (a) of the Revenue Act of 1918.

2. Where a taxpayer has erroneously written off one of its liabilities, and reported an equal amount as income, the amount so reported is not taxable.

*Carroll Sprigg, Esq.*, and *John E. Smart, C. P. A.*, for the petitioner.

*George G. Witter, Esq.*, for the Commissioner.

This appeal is from the determination of a deficiency in income and profits taxes for the year 1919, amounting to $58,306.90. The deficiency arises from the disallowance by the Commissioner of petitioner's claim for the deduction of $87,682.25 on account of obsolescence of petitioner's plant at Troy, Ohio, and his refusal to permit petitioner to eliminate from its taxable income $6,081.21 reported in its return for that year on account of a liability erroneously written off at the close of the year.

### FINDINGS OF FACT.

During the taxable year the petitioner was an Ohio corporation organized in 1909 and having its principal plant and offices at Troy, Ohio. Its capital stock consisted of 100,000 common and 50,000 preferred, all issued and outstanding prior to January 1, 1919.

Prior to the entry of the United States into the World War, the petitioner's sole business consisted of the manufacture of small, low-priced automobile bodies for open cars under contract with several other companies.

Almost immediately following the declaration of war by the Congress of the United States, the petitioner abandoned the manufacture of automobile bodies, remodeled its plant and devoted all its facilities to the production of aeroplane parts for companies engaged in the manufacture of aeroplanes for the Government of the United States.

On the cessation of hostilities the demand for aeroplanes in large quantities ceased. In the meantime the prevailing styles of automobiles had changed or were rapidly changing from the open to the closed cars, and the demand for open-car bodies had greatly decreased. The leading automobile producers had so increased and improved their facilities that the large plants were manufacturing their own cars complete. The petitioner's plant was not suited to the production of closed or of the new models of open-car bodies, or to quantity production of car bodies of any style. A careful survey convinced its directors that without very extensive changes in its plant, the taxpayer could not compete with other existing larger and more up-to-date concerns, and that the business outlook was not such as to justify the changes necessary to conform its facilities to the progress in the art of building car bodies. Its officials, therefore, decided to abandon and did abandon all business operations. On February 1, 1919, they leased it to one of the company's stockholders who had been superintendent and general manager for the taxpayer. The lease was for a period of three years at $10,000 per year gross rental. Payment of taxes, insurance and other charges left the corporation about $4,000 per year net income from the property. Concurrent with this transaction and a part of it, petitioner purchased the $22,000 of stock owned by the lessee, paid him therefor par value in cash and also released him from all responsibility as coindorser of certain company paper.

The lessee acquired the property for use in any manufacturing business promising profitable returns. He first considered the production of parts of aeroplanes and other machines and vehicles. After an extensive search for business he secured some contracts for building automobile bodies. He then formed the Troy Body Corporation, turned the lease in for stock, made necessary banking connections, organized an operating personnel and engaged in the production of open-car bodies. This company was unsuccessful. A receiver was appointed and about four years after beginning operations it was liquidated as a bankrupt. The lessee several times

offered the taxpayer $50,000 for the property in question. This offer was always refused and counter offers to sell to the lessee for $125,000, $100,000, and $75,000 were made and all such offers of sale were declined.

After the execution of the lease the lessee immediately went into possession. Petitioner did not, however, abate its efforts to sell. Its officials had, prior to the execution of the lease, sought buyers in Chicago, Detroit and other large cities. The following notice appeared in the Cincinnati Commercial Tribune for Saturday, April 26, 1919:

### For Sale

On Saturday, May 3, 1919, at 3 o'clock p. m., for the purpose of liquidation, the plant and equipment of the Troy Manufacturing Company, at Troy, Ohio, will be offered for sale upon the following terms and conditions; Sealed bids will be received up to and including 10 o'clock a. m., on said date, each bid to be accompanied by a certified check for $1,000.00, as a guarantee of good faith of said bid. All bids will be opened at time stated and property sold to the highest bidder. Terms cash.

The Troy Manufacturing Company, Troy, Ohio.

Prior to December 31, 1918, the petitioner acquired tangible capital assets which at that date were carried on its books in the amount of $221,434.91, against which at that date there was a depreciation reserve of $33,752.66. The depreciated book value of such assets at December 31, 1918, was $187,682.25. The assets in question and the respective original book values at such date were real estate, $9,100; buildings and equipment, $165,436.84; machinery and tools, $42,465.68; office furniture and fixtures, $4,432.39. The principal building is a brick structure upon which the Commissioner has allowed depreciation at the rate of 3 per cent per annum. There is also a wooden factory building upon which depreciation at the rate of 4 per cent per annum has been allowed. The alleged residual values of these buildings after deducting "closing depreciation" as hereinafter described were respectively $50,000 and $8,900.

During the year 1918 the Dayton Wright Aeroplane Co. billed and shipped material to petitioner for the manufacture of aeroplane parts. Proper credit for these materials was made on petitioner's books at the time of their receipt. At the end of the year it was discovered that such materials to the value of $6,081.21, properly billed, but for which no invoices had been received, were covered by petitioner's inventory. The value was, therefore, carried as a liability. When, at the end of the year 1919, no invoices from the aeroplane company had reached petitioner, its secretary and treasurer wrote the liability for these goods off its books and reported the amount as income in its return for 1919. Afterward, it restored the liability

to its books and requested allowance therefor in the settlement of its taxes for 1919. The Commissioner has refused to comply with its request.

In its income and profits-tax return for 1919 the petitioner deducted $95,164.25 from gross income on account of exhaustion, wear, and tear of its plant and equipment. Of this amount $7,482 was on account of " ordinary depreciation " and $87,682.25 was designated as " closing depreciation " the effect of which was to write down the depreciated cost of the plant and equipment from $187,682.25 to $100,000. The deduction for ordinary depreciation was computed on residual values resulting from the deduction claimed for closing depreciation. The following explanation was attached to the return:

*Note as to Closing Depreciation

The Troy Manufacturing Company was originally engaged in the manufacture of Automobile bodies, being established since 1909 at Troy, Ohio. From October 1917 to December 1918 the plant was given over entirely to the manufacture of airplane parts on orders from various companies holding government contracts. After the signing of the armistice the orders in progress were cancelled, final settlement thereof being made January 31, 1919. The company was then left with its former business gone and with a more or less obsolete plant on its hands in an undesirable location and it was therefore considered by the management to be poor policy to attempt to carry on any future manufacturing operations at the Troy plant. The plant was therefore advertised for public sale on May 3rd, 1919, but without success, and several attempts were also made to sell it privately for the sum of $100,000.00.

The best that could be done was to rent the entire plant, including machinery, equipment and fixtures, to the Troy Body Company, on a three year lease from the 31st of January 1919 at a gross rental of $10,000.00 out of which the Troy Manufacturing Company had to pay all taxes and insurance, besides suffering the loss through wear and tear of the plant and equipment.

For the above reasons therefore it is submitted that the deduction of $87,682.25, caused through the reduction of the plant to a fair value of $100,000.00, is a proper deduction according to Article 170 of Regulations 45 (Revised) and that $100,000.00 represents a generous valuation, especially if compared with the net income realized on a rental basis, which is less than $4,000.00 after deducting all charges.

Upon audit of such return the Commissioner disallowed " excessive depreciation " in the amount of $80,256.22, allowed $2,000 on account of amortization in the taxable year, refused to comply with the petitioner's request that the company's liability on account of goods received by it from the Dayton Wright Aeroplane Co. amounting to $6,081.20 be considered in the computation of its taxes, made other adjustments, and determined the deficiency now in controversy.

OPINION.

LANSDON : The parties agree that the depreciated book value of the real estate and machinery, consisting of the plant at Troy, Ohio, less the reserve for depreciation, was $187,682.25 at the signing of the

Armistice in November, 1918, and at January 1, 1919. Early in January, 1919, the petitioner ascertained that the business of manufacturing aeroplane parts, for which its plant had been remodeled in 1917, had practically ceased to exist. It believed also that the styles of bodies for automobiles and the methods of manufacturing the same had been so changed during the war that there was no longer a profitable field for the use of its plant in that line. It found no opening either for profitable employment or sale of the plant, and, therefore, claimed a deduction of $87,682.25 as " closing depreciation or obsolescence " in its income and profits-tax return for 1919. The Commissioner disallowed the claim and allowed only a reasonable rate of depreciation on the alleged residual value of the plant. The petitioner has appealed from these determinations of the Commissioner. If this deduction is allowable it must be based on one or the other of the following provisions of the Revenue Act of 1918:

Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

 *  *  *  *  *  *  *

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise;

 *  *  *  *  *  *  *

(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

The petitioner's contention that it is entitled to a deduction from gross income for the taxable year as obsolescence will be considered first. The assets here in question consisted of buildings and factory and office machinery, equipment, and fixtures. As the record discloses that none of this property was used in the trade or business of the petitioner during the year 1919, it is obvious that the alleged obsolescence, if any, occurred prior to the taxable year. If there was a progressive loss of value due to the causes alleged by the petitioner that loss culminated in obsoleteness at the date of the alleged abandonment of the property for the purposes for which it was acquired and is not deductible as obsolescence from the gross income of 1919.

The petitioner further contends that if the deduction claimed can not be allowed as obsolescence, it should have relief under the provisions of 234 (a) (4) of the Revenue Act of 1918 cited *supra*. It proved that early in January it ceased manufacturing operations and that thereafter it never used its plant or equipment for any production purposes and that subsequent to that date its only business activities consisted in the liquidation of its assets. It made many unsuccessful attempts to sell the property, which it repeatedly offered for $100,000 and in one instance for $75,000. A sale appearing to be impossible, it leased the plant and equipment for a term of three

years at an annual rental of $10,000, out of which it was required to pay taxes, insurance and the expenses of all external repairs. Do these facts establish the petitioner's contention that on account of unexpected changes, the property during the taxable year was reduced to a salvage value not in excess of $100,000 and thereby sustained a loss in the amount of $87,682.25? If there was such a loss do the facts bring it within the provision of the law which allows deductions from gross income on account of losses sustained during the taxable year and not compensated for by insurance or otherwise?

In support of its alternative contention the petitioner relies on the provision of the law cited above and on the Commissioner's administrative interpretation of that provision, set forth in Regulations 45 as follows:

ART. 170. *Closing depreciation account.*—If the use of any property in the business is permanently discontinued, although no sale or other disposition of the property has taken place, a determination of any gain or loss may be made; but any deduction in respect of any loss thereon must be disclosed in the taxpayer's return for the year in which the determination is made and a full statement of the facts and the basis upon which the computation is calculated must be attached to the return. Upon a sale or other disposition of the property, the consideration received shall be compared with the amount of the estimated salvage value used in computing the gain or loss as above provided, and the amount of the difference shall be treated as a gain or loss, as the case may be, of the year in which the sale or other disposition was made. See Articles 141–145.

ART. 143. *Loss of useful value.*—When through some change in business conditions the usefulness in the business of some or all of the capital assets is suddenly terminated, so that the taxpayer discontinues the business or discards such assets permanently from use in the business, he may claim as a loss for the year in which he takes such action the difference between the cost or the fair market value as of March 1, 1913, of any asset so discarded (less any depreciation sustained) and its salvage value remaining. This exception to the rule requiring a sale or other disposition of property in order to establish a loss requires proof of some unforeseen cause by reason of which the property must be prematurely discarded, as, for example, where an increase in the cost of or other change in the manufacture of any product makes it necessary to abandon such manufacture, to which special machinery is exclusively devoted, or where new legislation directly or indirectly makes the continued profitable use of the property impossible. This exception does not extend to a case where the useful life of property terminates solely as a result of those gradual processes for which depreciation allowances are authorized. It does not apply to inventories or to other than capital assets. The exception applies to buildings only when they are permanently abandoned or permanently devoted to a radically different use, and to machinery only when its use as such is permanently abandoned. Any loss to be deductible under this exception must be charged off on the books and fully explained in returns of income. * * *

The petitioner asserts that it has proved facts that bring it squarely within the provisions of section 234 (a) (4) of the Revenue Act of 1918 as interpreted by the Commissioner in the articles of the Regulations here quoted. It has written off its books a loss which it has measured and determined by capitalizing the earning power of the balance of assets carried forward. In its income and profits-tax return for 1919 it deducted the amount of the loss so determined and "made an explanation of the facts and the basis upon which the computation is calculated." It avers that it accepted the regulations as its guide in this procedure and as the only guide under which it could make a return that truly reflected its income for the taxable year. The proof of loss and the petitioner's explanation thereof did not convince the Commissioner and the deduction was not allowed.

We have given careful consideration to the evidence adduced by the petitioner and are not convinced that the facts warrant or that the law permits the deduction claimed. The obsolescence, if any, due to change in the art of automobile body building affected only the machinery. Some of the machinery was transferred to a body-manufacturing plant in another city, in which the petitioner was a stockholder, and some of it was transferred to and used by the lessee of the property, the Troy Body Corporation. The manager of the lessee testified that he was unable to make any profits because the machinery was out of date. This is not convincing. If the Troy Body Corporation could have secured business it may be assumed that it would have replaced any obsolescent or obsolete machinery with up-to-date equipment, especially as it had the use of a plant of large value at a rental that is alleged to have been little more than nominal. The buildings, making up the greater part of the value of the assets in question, were regarded by the lessee as suitable for and useful in a business identical with that which the petitioner had discontinued and that was conducted by the lessee for several years thereafter. There is no evidence that such buildings sustained loss of useful value in 1919 in the amount claimed by the petitioner.

The loss sustained, if any, seems to have been in the nature of a shrinkage of value. Such losses can be taken as deductions from gross income only when they have been realized by the sale or other disposition of the property. We are not convinced that the lease of the property for an annual rental alleged to represent only a moderate return on the so-called residual value of $100,000 is disposition thereof that comes within any provisions of law authorizing the reduction of income by the deduction of losses sustained during a taxable year. The action of the Commissioner in disallow-

ing the amount of $87,682.25 as a deduction from the gross income of the petitioner as for the year 1919, is approved.

It appears from the evidence that the petitioner took ordinary depreciation on only the alleged residual value of the assets in question. Since we have disallowed the deduction reducing the property to a value of $100,000, it follows that the amount of ordinary depreciation for the taxable year should be computed not on such residual value, but upon the book value of such assets, which the parties agree was $221,434.91. As there is no dispute as to the normal useful life of any of the property involved we leave this adjustment to be made under Rule 50.

In support of its claim that an amount of $6,081.21 included in its income and profits-tax return on account of a liability resulting from the receipt of materials not paid for should be deducted, the petitioner relies on the evidence of a single witness, who was its secretary and treasurer at the time of the transaction, and the making of the entries that are now alleged to have been erroneous. The witness testified that the amount represented the value of materials for the construction of aeroplane parts received from the Dayton Wright Aeroplane Co. during the prior year that had not been invoiced to it at the end of the year although the bills of lading therefor had been received.

The petitioner kept its books of account and made its income and profits-tax returns on the accrual basis. No invoice of the material was ever received from the aeroplane company and it was, therefore, impossible for the petitioner to accrue the cost of the merchandise. It received the materials, which were taken into its assets at the memorandum value of the parts and supplies at the date received. Since the petitioner never received an invoice for such materials and has never made any payment on the alleged value of such consignment, it is evident that it received and carried into its inventory merchandise in the amount of $6,081.21 for which it showed no corresponding liability, thus increasing its showing of income beyond the true income by that amount.

The writing off of this liability was bad bookkeeping; but there does not appear to have been any intention to defraud either the Government or the creditor. The amount written off was not a gain and was not income, and the United States is not entitled to tax it as such.

*Judgment will be entered on 10 days' notice, under Rule 50.*